# EXHIBIT 1

## COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, SS**  Superior Court Division
Civil Action No:

---

WILLIAM LIBBY, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF SARAH THERESA LIBBY )
)
    Plaintiff )
)
v. )
)
PARK, MARION AND VERNON STREETS )
OPERATING COMPANY, LLC, )
d/b/a BROOKLINE HEALTH CARE CENTER )
AND d/b/a CARE ONE AT BROOKLINE, )
PARK, MARION AND VERNON STREETS, LLC, )
CARE ONE, LLC AND JOHN DOE PHYSICIANS )
AND JANE DOE NURSES )
)
    Defendants )

---

### COMPLAINT

#### Parties

1.    The Plaintiff, William Libby, Personal Representative of the Estate of Sarah Libby is a resident of the Commonwealth of Massachusetts, residing at 212 Chestnut St., Apt. 1, Brookline, Massachusetts.

2.    The Defendant, Park, Marion and Vernon Streets Operating Company, LLC (hereinafter, "Park Marion Operating"), is a limited liability company organized to administer, service or enter into agreements for the servicing of, operate, manage, lease and otherwise deal

1

with, the certain real property located at Park, Marion and Vernon Streets, Brookline, MA, with its principal offices located at 173 Bridge Plaza North, Fort Lee, New Jersey.

3. The Defendant, Park, Marion and Vernon Streets, LLC (hereinafter "Park Marion LLC") is a limited liability company organized to acquire, own, hold, operate, manage, develop, improve, maintain, dispose of, mortgage, and realize the economic benefit from that certain real property located at Park, Marion and Vernon Streets, Brookline, MA with its principal offices located at 173 Bridge Plaza North, Fort Lee, New Jersey.

4. The Defendant, Care One, LLC (hereinafter "Care One"), is a limited liability company organized to invest in health care facilities and to render senior care management services with its principal offices located at 173 Bridge Plaza North, Fort Lee, New Jersey.

5. At all times hereinafter mentioned Defendants Park Marion Operating, Park Marion LLC and Care One operated, owned, leased, maintained, managed, and/or controlled the premises known as Care One at Brookline a/k/a Brookline Health Care Center (hereinafter "Brookline"), and certain equipment and facilities, located at 99 Park Street, Brookline, Massachusetts.

6. The Defendants John Doe Physicians (hereinafter "Physicians"), were and are physicians licensed to practice medicine or provide health care services in the Commonwealth of Massachusetts, and who were and are persons employed, and/or contracted by the Defendant. Physicians' identities are not presently known by Plaintiff and are thus fictitiously designated.

7. The Defendants Jane Roe Nurses (hereinafter "Nurses"), are licensed to provide health care services in the Commonwealth of Massachusetts, and were employed by Defendant. Nurses' identities are not presently known by Plaintiff and are thus fictitiously designated.

### Nature of the Action

8. This is a claim for negligence under Massachusetts common law and wrongful death under Mass. Gen. Laws. Ch. 229, and breach of contract.

### Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to Mass. Gen. Laws. Ch. 212, § 3 in that the case is a civil action for money damages and there is no reasonable likelihood that recovery by the Plaintiff will be less than or equal to Twenty-Five Thousand and 00/100s ($25,000.00) Dollars.

10. This Court has personal jurisdiction over Defendants Park Marion Operating, Care One d/b/a Brookline Health Care Center and Care One of Brookline, and Park Marion LLC because they regularly conducted business in Massachusetts at the time of the conduct at issue and committed the tortious acts at issue in Massachusetts.

11. This Court has personal jurisdiction over Defendants John Doe Physicians and Jane Roe Nurses because, upon information and belief, they worked and resided in Massachusetts at the time of the conduct at issue and committed the tortious acts at issue in Massachusetts.

12. This Court is the proper venue for this action pursuant to Mass. Gen. Laws. Ch. 223, § 1 in that all conduct at issue and tortious acts committed by Defendants occurred in Brookline, which is located in Norfolk County.

### Allegations of Fact Common to All Claims

13. On or about April 7, 2012, Sarah Libby (hereinafter "Ms. Libby"), age 72, was admitted to Brookline for skilled nursing care and rehabilitation subsequent to a hospitalization for seizures and falls. Prior to her hospitalization Ms. Libby had been living with her son, with

3

assistance from Evercare. She was noted to have the potential for discharge home with adequate services, (she and her son were considering long term care), and she was able to make her own decisions legally.

14. From the time of her admission to on or about May 7, 2014 Ms. Libby received continuous and ongoing nursing care and medical treatment from the Defendants.

15. Upon entering Brookline, Ms. Libby entered into a written agreement with Brookline (the "Agreement") that was intended to ensure that Brookline complied with all state and federal legal requirements in the performance of the Agreement.

16. Her medical history at the time of admission included, among other things, renal failure, limb swelling, personal history of fall, Type II diabetes, difficulty walking, general muscle weakness, depression, bipolar disorder, dysphagia-oropharyngeal, hypertension and a cardiovascular accident without infarct.

17. The Defendants held themselves out as specialists in the fields of rehabilitation and skilled nursing care with the expertise necessary to maintain the health and safety of persons unable to care adequately for themselves.

18. At the time of her admission to Brookline on April 7, 2012, Ms. Libby was noted to be on a soft diet, customized for her diabetes.

19. Due to the concern for the possibility of aspiration, a skilled nursing note on April 10, 2012 states that the head of Ms. Libby's bed was up to maintain aspiration precautions.

20. On April 14, 2012 skilled nursing notes indicate that Ms. Libby's appetite was good for both solid and liquid foods.

4

21. In June 2012 Ms. Libby's eating status was changed from independent eating to continual supervision. In July, it was noted to be independent again, but through August and September she was again noted to require continual supervision while eating.

22. At 4:00 a.m. on July 7, 2012, Ms. Libby was found lying face down in front of her bathroom door. She suffered no injuries, but was assessed to be at a high risk for falls.

23. At 12:00 a.m. on July 7, 2012 Ms. Libby vomited a small amount of undigested food and fell back asleep. At 7:00 a.m. she was noted to be alert and verbally responsive, and again vomited some undigested food.

24. In August of 2012 Ms. Libby's toileting status was changed from independent to physical assist. On August 22, 2012, notes indicate Ms. Libby required continual supervision while eating. On August 30, 2012 falls are listed as Ms. Libby's primary problem on her Interdisciplinary Care Plan Problem List.

25. On September 9, 2012 Ms. Libby's Interdisciplinary Care Plan listed several factors contributing to her fall risk, including syncope, bipolar disorder and several of her medications. It was determined that she should have a scoop mattress for prevention. There are no notes, however, in Ms. Libby's records indicating that she received the scoop mattress.

26. The Licensed Nursing Summary dated September 25, 2012 noted again that Ms. Libby required continual supervision and cueing while eating.

27. A Fall Risk Assessment on September 30, 2012 indicates that Ms., Libby's fall risk was 9, with a 10+ rating being high.

28. From October 2012 through August 2013, Ms. Libby was noted to be eating independently.

5

29. An April 2, 2013 care plan and nutrition assessment notes that Ms. Libby was to continue with a soft diet due to her chewing and swallowing issues.

30. On April 5, 2013, Ms. Libby reported to nursing that she had fallen the night before, and her fall risk assessment was increased to 20, with anything over 10 being high.

31. On April 20, 2013 Ms. Libby was noted to be independent for toilet use

32. Ms. Libby suffered her third fall at Brookline on May 18, 2013. Again, in the early morning hours, she was found lying on the floor in front of the bathroom door. She told them that she lost her balance on her way to the bathroom. Her fall risk was assessed to be 16.

33. In June 2013, supervised toileting was ordered for Ms. Libby. In July 2013 it was changed to independent and remained so for the remainder of the year.

34. On September 13, 2013, Ms. Libby's dining ability was changed from independent to supervised. On September 29, 2013 it was changed back to independent and remained so for the remainder of 2013.

35. Throughout 2013, Ms. Libby was noted to be active, alert, communicative, and generally oriented, with some occasional cognitive impairment and forgetfulness. In April, however, it was determined that she was no longer capable of making complex medical, legal and financial decisions and appointed her son as her health care proxy.

36. In early 2014, Ms. Libby began suffering increased episodes of anxiety and lability, as well as refusing care and medications. Pursuant to Section 12, she was transferred to the emergency room at Beth Israel Deaconess on February 7, 2014 for psychiatric evaluation. She was later transferred from Beth Israel to Lawrence Memorial Hospital for in-patient care; and was readmitted to Brookline on February 19, 2014.

37. At the time of her readmission to Brookline, Ms. Libby was noted to be alert, disoriented to time, and communicating clearly. She required assistance with dressing and bathing, but was independent for eating, walking and toileting. A nutrition assessment on February 25, 2014 noted that Ms. Libby was able to dine independently; and, that she had chewing difficulties and required mechanically altered food (soft).

38. A Licensed Nursing Summary on February 28, 2014 indicates that Ms. Libby's diagnoses included syncope with fall and altered mental status. She was noted to require assistance with walking and toileting, and was independent with eating and transfers.

39. On March 3, 2014, Ms. Libby's interdisciplinary care plan problem list included: impaired ADL (activities of daily living) function, falls, impaired cognition, psychotropic drug use, non-compliance with diet and alterations in behavior. Ms. Libby suffered her fifth fall at Brookline on March 8, 2014 while trying to go to the bathroom.

40. The Licensed Nursing Summary on March 26, 2014 indicates that Ms. Libby required assistance with mobility and toilet use, but was independent with eating.

41. Physician's orders for April 1, 2014 through April 30, 2014 noted that Ms. Libby was to continue with a soft consistency diet.

42. On April 8, 2014 Ms. Libby suffered an unwitnessed fall from her wheelchair while trying to self-transfer from her wheelchair to her bed. After she was assisted back to her wheelchair she vomited a moderate amount of undigested food. On April 12, 2014 Ms. Libby's Fall Risk Predictive Factors Assessment was assessed as high.

43. On April 23, 2014, the Licensed Nursing Summary notes that Ms. Libby was occasionally confused, and required assistance with dressing, mobility, transfer and toilet use. Her

eating status was again changed from independent to continual supervision and cueing while eating.

44. Physician orders for May 1 through May 30, 2014 included a soft consistency diet. On May 3, 2014 Ms. Libby was noted to be alert and oriented x 2, and was using a roller for ambulation and a wheelchair for mobility.

45. On the morning of May 7, 2014, a resident in the day room alerted the nurses to help Ms. Libby who was holding her chest and in distress. A nurse's note later in the day said that Ms. Libby was seen holding her neck and tapping on her chest; and that she became unresponsive as she was being assessed by staff.

46. Ambulance records on May 7, 2014 note that Ms. Libby was receiving CPR when they arrived; that she had been down for about twenty minutes; and, that she had become unresponsive while eating breakfast. They attempted to place an endotracheal tube, but had to remove a silver dollar sized piece of food before they were able to successfully intubate her.

47. Ms. Libby arrived at Beth Israel Hospital unresponsive. She was pronounced dead in the emergency room. The emergency physician's diagnosis was respiratory distress, secondary to aspiration. On autopsy Ms. Libby was found to have a large volume of undigested food in her stomach and evidence of recent aspiration in her left lung.

<u>Count I</u>
(Common Law Negligence)
Alleged Against All Defendants

48. The Plaintiff re-alleges and incorporates paragraphs 1-47 of the Declaration.

49. At all material times, Ms. Libby was under the medical diagnosis, care, and treatment of the Defendants and their agents, servants, and employees.

8

50. The Defendants owed a duty to patients of their rehabilitation and skilled nursing facility, including Ms. Libby, to provide nursing and/or medical care and treatment in accordance with the applicable standards of care.

51. The Defendants, their agents, officers, servants, employees, and assigns failed, refused, and/or neglected to perform their duty to provide reasonable and adequate healthcare to and for Ms. Libby, who was unable to attend to her own health and safety.

### *Failure to properly recognize, evaluate and assess Ms. Libby's risk for food aspiration and choking:*

52. The Defendants, its agents, officers, servants, employees, and assigns knew or should have known of the dangers to Ms. Libby for aspiration and choking given her diagnosis of dysphagia, as well as her diet restrictions, medical conditions and medications.

53. The Defendants, exercising control over the management and care of Ms. Libby, failed and/or neglected to perform their duty when they failed to recognize Ms. Libby's risk for food aspiration and choking; failed to evaluate Ms. Libby for aspiration and choking risks; and failed to obtain an assessment of Ms. Libby's dysphagia.

54. As a direct and proximate result of the Defendants' negligence, including their failure to properly and timely recognize, evaluate and assess the aspiration and choking risks to Ms. Libby, she suffered significant damages, including but not limited to pain and suffering, and emotional distress, culminating in her death.

### *Failure to implement proper feeding precautions for Ms. Libby:*

55. The Defendants, their agents, officers, servants, employees and assigns knew or should have known that Ms. Libby, due to her diet restrictions, medical conditions and

9

medications, required feeding precautions, including but not limited to, a modified diet and supervision and/or assistance during mealtime.

56. The Defendants, exercising control over the management and care of Ms. Libby, failed and/or neglected to perform their duty to provide reasonable and adequate health care to Ms. Libby by failing to consistently provide supervision and/or assistance to Ms. Libby during mealtimes.

57. As a direct and proximate result of the Defendants' negligence, including their failure to implement proper feeding precautions for Ms. Libby, Ms. Libby sustained and suffered serious injury, including pain and suffering and emotional distress, culminating in her death.

*Failure to assess fall risks and prevent falls:*

58. The Defendants, their agents, officers, servants, employees and assigns knew or should have known that Ms. Libby was at continual risk for falls due to her fall history, medical conditions and medications.

59. The Defendants, exercising control over the management and care of Ms. Libby failed and/or neglected to perform their duty to provide reasonable and adequate health care to Ms. Libby by failing to assess fall risks and prevent falls.

60. As a direct and proximate result of the Defendants' negligence, including their failure to assess fall risks and prevent falls, Ms. Libby sustained and suffered injury, including pain and suffering and emotional distress.

**The Plaintiff requests a jury trial on all issues so triable.**

10

## Count II
### (Wrongful Death)
### Alleged Against All Defendants

61. The Plaintiff re-alleges and incorporates paragraphs 1-60 of the Declaration.

62. As a direct and proximate result of Defendants' aforesaid conduct, Ms. Libby sustained serious injury, resulting in death, and suffered great mental and physical pain as a consequence of the injury she sustained when the Defendants failed to, *inter alia*, evaluate and recognize her aspirations choking risks; and timely assess and implement proper feeding precautions for her due to her diet restrictions, health conditions and medications.

63. Mass. Gen. Laws. Ch. 229 permits administrators of estates, such as Plaintiff in this case, to sue for the wrongful death of a decedent. Mass. Gen. Laws. Ch. 229 permits the administrator to recover damages suffered by the decedent, including, but not limited to:

> (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent; (3) punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant....

64. The Defendants' aforesaid conduct wrongfully caused Ms. Libby's death.

65. But for the injury she sustained that caused her premature death, Ms. Libby was expected to live beyond May 7, 2014.

66. As a direct and proximate result of Ms. Libby's wrongful death caused by the Defendants, Plaintiff of the Estate of Sarah Libby incurred funeral and other reasonable expenses caused by the fatal injury suffered by Ms. Libby.

11

67. The Defendants' aforesaid conduct wrongfully caused Ms. Libby loss of enjoyment of life for the remainder of her expected life, separate and distinct from economic loss and conscious pain and suffering.

68. Ms. Libby lost a compensable enjoyment of life due to the direct and proximate result of the Defendants' aforesaid negligent conduct.

69. Based on the foregoing facts, the Defendants are liable to Plaintiff for substantial and considerable damages.

**The Plaintiff requests a jury trial on all issues so triable.**

### Count III
### (Breach of implied covenant of good faith, reasonableness and fair dealing)
### Alleged Against All Defendants

70. The Plaintiff re-alleges and incorporates paragraphs 1-69 of the Declaration.

71. Pursuant to the written and/or oral agreement(s) between the facility and the deceased or the decedent's legal representatives, the facility had a duty to provide reasonable, necessary and competent services to the deceased under Massachusetts Law.

72. The deceased, and/or her representatives, compensated the facility for its failed services according to the agreement(s) either through direct payments by the deceased or via third parties.

73. On or about April 2012 and continuing, the facility failed to provide adequate staff to care for the deceased in order that the facility would maximize its profits.

74. The facility failed to provide reasonable and competent services to the detriment of the deceased due to, among other reasons, staff shortages.

75. The facility has been unjustly enriched by accepting full payment for its services from the decedent, but failing to provide reasonable, adequate and effective nursing services.

76. The deceased was caused to suffer economic losses as a result.

**The Plaintiff requests a jury trial on all issues so triable.**

### Count IV
### (Violation of Mass. Consumer Protection Act, M.G.L. 93A)
### Alleged Against Park Marion Operating, Park Marion LLC, Care One and Brookline

77. The Plaintiff re-alleges and incorporates paragraphs 1-76 of the Declaration.

78. The Plaintiff made a claim for damages and asserted that liability was reasonably clear on November 17, 2015.

79. From April 7, 2012 through May 7, 2014, Park Marion Operating, Park Marion LLC, Care One and/or Brookline managed services at the Brookline Health Care Center facility.

80. On or about April 7, 2012, Ms. Libby entered into a contract in which the facility undertook a duty to perform certain nursing related services to Ms. Libby in exchange for payment while Ms. Libby was a resident at Brookline Health Care Center.

81. Agents, servants and/or employees of Park Marion Operating, Park Marion LLC, Care One and Brookline engaged in unfair and deceptive practices when caring for Ms. Lawrence from April 7, 2012 through May 7, 2014 by holding themselves out as capable of providing nursing and physician services in a timely and effective way, and capable of providing adequate staffing to attend to Ms. Libby's needs, while understaffing the facility in contradiction to the promises made in the residential agreement with Ms. Libby. All of which resulted in their failure to properly assess, evaluate and maintain adequate aspiration and choking precautions and failure to properly maintain fall precautions.

13

82. The Plaintiff placed Park Marion Operating, Park Marion LLC, Care One and Brookline on notice of a 93A violation on January 19, 2017, via certified mail, return receipt requested.

83. The Plaintiff was caused to suffer substantial damages in detrimental reliance on Park Marion Operating, Park Marion LLC, Care One and Brookline's false representations.

84. The Plaintiff prays for the relief that would be granted pursuant to M.G.L. 93A, as well as attorney's fees.

### Damages

85. The Plaintiff re-alleges and incorporates paragraphs 1-84 of the Declaration.

86. As a direct and proximate result of the Defendants' aforesaid conduct, Ms. Libby sustained serious injury and suffered great pain culminating in her death as a consequence of the injury she sustained when the Defendants failed to, *inter alia*, timely evaluate and recognize Ms. Libby's aspiration and choking risks; and provide adequate supervision and/or assistance to Ms. Libby during mealtimes.

87. Based on the foregoing facts, the Defendants are liable to the Plaintiff for substantial and considerable damages within the jurisdictional limits of this Court.

**WHEREFORE**, the Plaintiff, William Libby, prays that this Honorable Court:

A. Grant the Plaintiff's Complaint;

B. Issue judgment against the Defendants for Plaintiff's damages, including interest and attorney's fees and costs incurred within the jurisdictional limits of this Court; and

C. Issue such other Orders as justice requires.

RESPECTFULLY SUBMITTED,

For the Plaintiff,
William Libby, Personal Representative of
the Estate of Sarah Libby,
By his attorneys,
SHAINES & MCEACHERN, P.A.

Dated:  February 22, 2017

_____
Daniel C. Federico, Esq.
BBO # 645717
PO Box 360
Portsmouth, N.H. 03802
(603) 436-3110
dfederico@shaines.com

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 1782CV00255 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: William Libby Personal Representative of the Estate of Sarah Theresa Libby vs. Park Marion and Vernon Streets Operating Company LLC Doing | | Walter F. Timilty, Clerk of Courts |
| TO: Lauren C Ferenco, Esq. Shaines and McEachern PA 282 Corporate Drive Unit 2 Portsmouth, NH 03801 | | COURT NAME & ADDRESS Norfolk County Superior Court 650 High Street Dedham, MA 02026 |

## TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                               **DEADLINE**

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 05/30/2017 | |
| Response to the complaint filed (also see MRCP 12) | | 06/27/2017 | |
| All motions under MRCP 12, 19, and 20 | 06/27/2017 | 07/27/2017 | 08/28/2017 |
| All motions under MRCP 15 | 04/23/2018 | 05/23/2018 | 05/23/2018 |
| All discovery requests and depositions served and non-expert despositions completed | 02/18/2019 | | |
| All motions under MRCP 56 | 03/19/2019 | 04/18/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/16/2019 |
| Case shall be resolved and judgment shall issue by | | | 02/27/2020 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time. Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service. This case is assigned to

| DATE ISSUED 02/27/2017 | ASSISTANT CLERK | PHONE |
|---|---|---|

Date/Time Printed: 02-27-2017 09:03:55

SCV0261 11/2014

**COMMONWEALTH OF MASSACHUSETTS**
**COUNTY OF NORFOLK**
**THE SUPERIOR COURT**

Civil Action No. [ ]

William Libby, Personal Representative
of the Estate of Sarah Theresa Libby

VS.

Park, Marion and Vernon Streets Operating
Company, LLC d/b/a Brookline Health Care Center and
d/b/a Care one at Brookline, Park, Marion and Vernon Streets, LLC,
and Care One, LLC and John Doe Physicians and Jane Doe Nurses

## NOTICE OF APPEARANCE

**TO THE CLERK OF THE ABOVE NAMED COURT:**

**Please enter my appearance as attorney for**     plaintiff(s)

William Libby, Personal Representative of the Estate of Sarah Theresa Libby

**In the above entitled action.**

**Date:**    2/22/17

Signature: [signature]

| | |
|---|---|
| Print name: | Daniel C. Federico, Esq. |
| Address: | Shaines & McEachern, PA |
| Address: | 282 Corporate Dr., Suite 2 |
| City/State/Zip | Portsmouth, NH 03801 |
| BBO# | 645,717 |
| Phone Number | +1 (603) 436-3110 |

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| PLAINTIFF(S): William Libby, Personal Representative of the Estate of Sarah Libby <br> ADDRESS: 212 Chestnut St., Apt. 1, Brookline, MA 02445 | | COUNTY <br> Norfolk |
| | DEFENDANT(S): Park, Marion and Vernon Streets Operating Company, LLC d/b/a Brookline Health Care Center and d/b/a Care One at Brookline, Park, Marion and Vernon Streets, LLC, Care One, LLC and John Doe Physicians and Jane Doe Nurses | |
| ATTORNEY: Daniel C. Federico, Esq. <br> ADDRESS: Shaines & McEachern, P.A. <br> 282 Corporate Dr., Suite 2, Portsmouth, NH 03801 | ADDRESS: 99 Park Street, Brookline, MA 02446 | |
| BBO: 645717 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B06 | Nursing Home Malpractice - Wrongful Death | A | ☒ YES  ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................................................................................ $ 12,000.00
2. Total doctor expenses ................................................................................................................. $
3. Total chiropractic expenses ........................................................................................................ $
4. Total physical therapy expenses ................................................................................................. $
5. Total other expenses (describe below) ....................................................................................... $ 10,000.00
   Subtotal (A): $ 22,000.00
   Funeral/burial
B. Documented lost wages and compensation to date ................................................................... $
C. Documented property damages to dated .................................................................................. $
D. Reasonably anticipated future medical and hospital expenses ................................................. $
E. Reasonably anticipated lost wages ........................................................................................... $
F. Other documented items of damages (describe below) ............................................................ $ 800,000.00
   Pain and Suffering
G. Briefly describe plaintiff's injury, including the nature and extent of injury:
   Food aspiration and wrongful death due to substandard care. Conscious pain and suffering.
   
   TOTAL (A-F): $ 822,000.00

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
Breach of implied covenant of good faith, reasonableness and fair dealing.
Violations of M.G.L. c.93A and M.G.L. c.176D

TOTAL: $ 234,000.00

Signature of Attorney/Pro Se Plaintiff: X _(signature)_   Date: Feb 22, 2017

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _(signature)_   Date: Feb 22, 2017