UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM LIBBY, Personal Representative ) | | |
| of the ESTATE OF SARAH THERESA LIBBY, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | CIVIL ACTION | |
| ) | NO. 17-10843-JGD | |
| PARK, MARION AND VERNON STREETS ) | | |
| OPERATING COMPANY, LLC, d/b/a ) | | |
| BROOKLINE HEALTH CARE CENTER, ) | | |
| ) | | |
| Defendant. ) | | |

# MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS

March 20, 2018

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, William Libby, in his capacity as the Personal Representative of the Estate of Sarah Theresa Libby ("Ms. Libby"), brought this action against Park, Marion and Vernon Streets Operating Company, LLC d/b/a Brookline Health Care Center ("BHCC").[1] As alleged in the Complaint, Ms. Libby choked to death when she was left unsupervised to eat in the dayroom of the assisted living facility in which she resided.

---

[1] The plaintiff had named as additional defendants "John Doe Physicians" and "Jane Doe Nurses"; however, those defendants were dismissed by order of this court dated October 6, 2017. (See Docket No. 25).

Suit was originally filed in Norfolk Superior Court on or about February 27, 2017, and the Complaint was served on BHCC on or about April 14, 2017. (Docket No. 1 at ¶¶ 1, 2). A First Amended Complaint ("FAC") was filed on or about May 2, 2017. (Id. at ¶ 2; Id. at Ex. 5). BHCC removed the action to this court on May 12, 2017, alleging that this court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) on the basis of diversity of citizenship between the parties, and an amount in controversy in excess of $75,000. (Docket No. 1).

The plaintiff subsequently filed a "Motion to Amend Complaint to Add New Party" seeking to add the Director of Nursing at BHCC, Altagrace Metayer, as a defendant (Docket No. 24) and a "Motion to Remand" this matter to state court, arguing that the addition of Nurse Metayer would have defeated diversity jurisdiction. (Docket No. 31). This court denied both motions without prejudice, holding that the proposed Second Amended Complaint (Docket No. 24-1) failed to state a claim against Ms. Metayer, and that, as a result, diversity jurisdiction was not disturbed and there was no basis to remand this action to state court. (See Docket No. 37).

Thus, the operative complaint is the FAC, which purports to state a claim of negligence (Count I), wrongful death (Count II), "[b]reach of implied covenant of good faith, reasonable-ness and fair dealing" (Count III), and violation of Mass. Gen. Laws ch. 93A (Count IV). (Docket No. 1 at Ex. 5).

This matter is before the court on BHCC's motion to dismiss Count IV for failure to state a claim, brought pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Docket No. 12). For the reasons detailed herein, the FAC satisfies the pleading requirements for a claim of unfair or deceptive business practices under Mass. Gen. Laws. ch. 93A. Therefore, defendant's motion to dismiss (Docket No. 12) is DENIED.

## II. STATEMENT OF FACTS

BHCC operates a senior care facility located at 99 Park Street, Brookline, Massachusetts, known as Brookline Health Care Center. (FAC ¶ 2). BHCC held itself out "as a specialist in the fields of rehabilitation and skilled nursing care with the expertise necessary to maintain the health and safety of persons unable to care adequately for themselves." (Id. ¶ 15). Ms. Libby was admitted to BHCC on or about April 7, 2012 for skilled nursing care and rehabilitation after a hospitalization for seizures and falls, and she remained there until her death on May 7, 2014. (Id. ¶¶ 11-12). Upon her admittance, Ms. Libby signed a written agreement (the "Agreement") with BHCC that "was intended to ensure that [BHCC] complied with all state and federal legal requirements in the performance of the Agreement." (Id. ¶ 13).

Throughout her time at BHCC, Ms. Libby was deemed to be at risk for falls. (E.g., id. ¶¶ 20, 22, 25, 28, 30, 36, 37, 40). She fell unsupervised or reported falling unsupervised on July 7, 2012; April 5, 2013; May 18, 2013; and April 8, 2014. (Id. ¶¶ 20, 28, 30, 40). Her medical records also indicated that she was on a soft diet, customized for her diabetes, and at variable times during her residency at the facility required continual supervision while eating since she was at risk for aspiration. (E.g., id. ¶¶ 16-19, 24, 26-27, 32, 35-36, 38-39, 41-42). As further alleged in the First Amended Complaint:

> On the morning of May 7, 2014, a resident in the day room alerted the nurses to help Ms. Libby who was holding her chest and in distress. A nurse's note later in the day said that Ms. Libby was seen holding her neck and tapping on her chest; and that she became unresponsive as she was being assessed by staff.

(Id. ¶ 43). When ambulance personnel attempted to insert an endoctracheal tube, they "had to remove a silver dollar sized piece of food before they were able to successfully intubate her."

(Id. ¶ 44). Ms. Libby was pronounced dead upon her arrival at Beth Israel Hospital. (Id. ¶ 45). The cause of death was "respiratory distress, secondary to aspiration." (Id.). An autopsy revealed "a large volume of undigested food in her stomach and evidence of recent aspiration in her left lung." (Id.).

The plaintiff further alleges that BHCC "failed to provide adequate staff to care for [Ms. Libby] in order that the facility would maximize its profits" (id. ¶ 71) and that BHCC held itself out "as capable of providing nursing and physician services in a timely and effective way" and "of providing adequate staffing to attend to Ms. Libby's needs," while "understaffing the facility in contradiction to the promises made in the [Agreement] with Ms. Libby." (Id. ¶ 79). The plaintiff alleges that this understaffing "resulted in [BHCC's] failure to properly assess, evaluate and maintain adequate aspiration and choking precautions and failure to properly maintain fall precautions." (Id.).

On January 19, 2017, the plaintiff served BHCC with a 93A demand letter by certified mail, return receipt requested. (Id. ¶ 80).

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard of Review

Chapter 93A claims that do not involve fraud, are not subject to heightened pleading requirements. Crisp Human Capital Ltd. v. Authoria Inc., 613 F. Supp. 2d 136, 139 (D. Mass. 2009). Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. When confronted with such a motion, the court accepts as true all well-pleaded facts and draws all

4

reasonable inferences in favor of the plaintiff.  See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).

As the First Circuit has explained, in considering the merits of a motion to dismiss, the court proceeds in two steps.  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  First, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id. at 55.  Second, we "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Id.  Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).  "Plausible . . . means something more than merely possible[.]"  Schatz, 669 F.3d at 55.  "The bottom line is that the combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief."  Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014) (internal citations and quotations omitted).  "Engaging in this plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).

### B.      Sufficiency of the 93A Claim for Unfair or Deceptive Practices

The Massachusetts Consumer and Business Protection Act, Mass. Gen. Laws ch. 93A, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.  The applicability of ch. 93A to the provision of medical services

5

was addressed by the Massachusetts Supreme Judicial Court ("SJC") in the seminal case of Darviris v. Petros, 442 Mass. 274, 812 N.E.2d 1188 (2004), which both parties agree is controlling here. As the Darviris Court explained, "a violation of G.L. c. 93A requires, at the very least, more than a finding of mere negligence" and, therefore, "a claim for the negligent delivery of medical care, without more, does not qualify for redress" under ch. 93A. Id. at 278, 812 N.E.2d at 1193. However, the Court continued, "this does not mean that all conduct of medical care providers is beyond the reach of [Mass. Gen. Laws ch. 93A] . . . . [C]onsumer protection statutes may be applied to the entrepreneurial and business aspects of providing medical services, for example, advertising and billing, even though those statutes do not reach medical malpractice claims." Id. at 279, 812 N.E.2d at 1193, and cases cited.

BHCC argues that plaintiff's 93A claim must be dismissed, pursuant to Darviris, because it is "premised on nothing more than alleged nursing negligence in failing to prevent Ms. Libby's death." (Def. Mem. (Docket No. 13) at 2). Plaintiff argues to the contrary, contending that he has sufficiently alleged an unfair or deceptive business practice concerning the entrepreneurial or business aspect of BHCC's provision of medical services. This court agrees that the plaintiff has alleged sufficient facts to survive a motion to dismiss.

Plaintiff relies primarily on Soderstrom v. Beaumont Nursing Home, Inc., No. 040338A, 2008 WL 5216865 (Mass. Super. Ct. Nov. 4, 2008). In that case, an 84 year old resident of a nursing home fell while she was being transported in a wheelchair by an employee of the home. She died several days later as a result of injuries sustained from her fall. The plaintiff brought suit, alleging a violation of Mass. Gen. Laws ch. 93A. The defendant moved for summary judgment on the grounds that the complaint stated no more than a claim for negligent

medical care and, therefore, that the 93A claim was precluded by Darviris.  The Soderstrom trial judge disagreed, and denied the motion for summary judgment.

In denying the motion, the Soderstrom court ruled that the plaintiff's case was not solely based on a medical malpractice claim because the plaintiff also alleged "violations of state and federal regulations related to staffing requirements at nursing homes"; claimed that defendant's "corporate practice of understaffing its facilities to cut costs contributed to [plaintiff's] death"; and claimed that defendant "misrepresented the quality of care at its facilities in order to maximize profits at the expense of its patrons." Id. at *2.  The court held that those allegations concerned the "entrepreneurial and business aspects of providing medical services" and that therefore, Darviris did not foreclose the plaintiff's 93A claim.  Id.

For the same reasons, this court finds that the plaintiff in the instant case has sufficiently alleged a plausible 93A claim to withstand a motion to dismiss.  The plaintiff has provided sufficient facts to support a practice of understaffing by BHCC, as evidenced by Ms. Libby's unsupervised fall on April 8, 2014 and her unsupervised choking incident on May 7, 2014; a link between the understaffing and decedent's death; a plausible inference that BHCC understaffed its facility in order to maximize profits; and a misrepresentation on the part of BHCC as to the quality of the care at its facility as related to staffing.  (See FAC ¶¶ 40, 43, 71, 78, 79).  These allegations do not constitute mere negligence but concern the "entrepreneurial and business aspects of providing medical services."  Darviris, 442 Mass. at 279, 812 N.E.2d at 1193.

The various cases to which defendant cites in support of its motion are inapposite.  For example, a number of the cases to which defendant cites address whether the plaintiff met his or her evidentiary burden on summary judgment, rather than on a motion to dismiss.  See, e.g.,

7

MacDonald v. GGNSC Attleboro-Ridge Court, LLC, No. BRCV 2008-0487 at 5, 8 (Mass. Super. Ct. June 30, 2011); Vaz v. Welch Healthcare & Ret. Grp., Inc., No. SUCV 2008-1289, at 5-6 (Mass. Super. Ct. Feb. 1, 2010); Donovan v. Colonial Health Grp. – Westbridge LLC, No. MICV 2010-01188 (Mass. Super. Ct. Apr. 3, 2014); Nalbandian v. Alliance Health of Mass., Inc., No. ESCV 2010-02050, at 11-12 (Mass. Super. Ct. Mar. 6, 2012). In Battaglia v. Healthbridge Mgmt., LLC, No. 11-10775-GAO, 2014 WL 2215838 (D. Mass. May 29, 2014), which was decided at the motion to dismiss stage, there were no allegations connecting the business aspect of the defendant's provision of medical services to the plaintiff's injuries, as a result of which the court held that the plaintiff had failed to plead a viable 93A claim. Id. at *2. In contrast, in the instant case, plaintiff has sufficiently alleged a business practice of understaffing in order to maximize profits, and a connection between understaffing and the plaintiff's injuries.

In sum, the plaintiff has alleged sufficient facts to state a plausible claim for relief under Mass. Gen. Laws ch. 93A. This court expresses no opinion as to whether the facts, as developed through discovery, will be sufficient to maintain a ch. 93A claim.

### IV. CONCLUSION

For all the reasons detailed herein, defendant's "Motion to Dismiss Count IV of the Plaintiff's Amended Complaint" (Docket No. 12) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge